Thank you for your service. The next case is Cheryl, this is McEwen Loan Servicing v. Cheryl Glover, Consumer Financial Protection Bureau is here as amicus curia. Scott Burnett Smith is here for the appellant, McEwen Loan Servicing. Glenn Chappell is here for Cheryl Glover and Cathy Booze. And Joseph Forzone is here for the amicus curia, Consumer Financial Protection Bureau. And Mr. Smith, you may begin your argument. Thank you, Your Honor, and may it please the Court. This statutory case arises from the Fair Debt Collection Practices Act. The preface to 1692F prohibits a debt collector from using unfair or unconscionable means to collect a debt. The issue in this case is does the act cover a convenience fee for an optional avoidable service distinct from debt collection, namely the same-day processing of payments by phone or online? Does the act prohibit debt collectors from collecting, it says, any amounts unless the amounts are expressly authorized by the agreement creating the debt or permitted by law. If I accept your argument, any doesn't mean any in this case. It does not, Your Honor. Any doesn't mean any? It does not because the verb that is used in 1692F1 is to collect. Any doesn't mean any. What does it mean? Well, nascatur asosus would tell the Court to look at the entire language and to read any in terms of all of the words around it. And so if you look at the Villareal en banc decision from this Court, Judge, the decision in Villareal looks back to Chief Justice Marshall who says in an opinion there that any person could be any human anywhere. You have to look at the context and here the verb is to collect. If you look at 1692F5, it speaks in contrast about charging an amount. And here So we should depart from the reasoning of the Fourth Circuit in Alexander v. Carrington Mortgage Services Company where the Fourth Circuit said any amount means what it says. Any amount, whether or not that amount is incidental to the principal obligation. Yes, Your Honor. And that couldn't be the law in this circuit because of prior existing panel precedent like Anderman and Reese which require two essential elements for an actionable claim under this statute. First, the defendant must be a debt collector. And second, the issue being attacked must be debt collection. In Alexander, the Fourth Circuit said that it had to have no contact, no connection whatsoever to debt collection or the underlying mortgage. Here in this circuit, you must show that what's being attacked is part of debt collection. And here the statute says you have to be collecting an amount. And instead here, a convenience fee is for a separate service that is distinct from debt collection. There's a separate offer. Let me ask you this. So let's just assume I agree with your, the idea that you have to read this incidental to the principal obligation as, you know, a caveat or a, you know, some kind of addition to the any amount. How is this fee not related to the collection of the debt? Because this is the fee that you pay that lets you pay the debt payment? I mean, I guess I see that argument, that argument could be better in a case where, you know, the fee truly is completely unrelated. You know, it's a, you're actually, you've got a separate transaction going on with the debt collector where you're renting office furniture from them or something like that. I could understand that. But here, I mean, it's the fee that you have to pay in order to pay the obligation. How is it not incidental? How is it not related to that? Well, it's not, Your Honor, because the underlying debt instruments define how payment is to be made, and that's by mail, in a check, or another paper instrument. In here, this is a separate service that the mortgage company. Yeah, but see, if that's the definition, and I get that, it just seems if that's the way you would do it, then the way, you're sort of circular because you're saying if the fee is expressly provided for in the agreement, then it's fine because it says you can charge that fee. And if it's not expressly provided for in the agreement, then it's fine because it's not related to the debt. That can't be right. Well, the language of 1692F speaks in terms of the collection of the amount, and here when OCOQUAN isn't collecting this amount for another, it's something that it charges in a two-way economic transaction in real time, as opposed to debt collection, which is a three-party transaction, where you have a borrower, a creditor, and a collector. And here, what they're trying to interpret the statute to prohibit is any amount for any service when it's a real-time transaction, every time these borrowers paid this fee, they were given an offer, they were given full disclosure, and they accepted that service, which was cheaper than if they had made their own arrangements. So if it's permitted by law, what's the law? Because it's not in the agreement. It's not. You could have put it in the agreement, but you didn't put it in the agreement. The mortgage company didn't put it in the agreement, so that's out. What's the law? It's got to be permitted by law under the statute, this Fair Debt Collection Practices Act. So we know by virtue of this statute written by this Congress that permitted by law does not mean what they say it means, which is permitted by a state statute. Because if you look at 1692N, But it's got to be permitted by a law. It has to be permitted, and we also know that it cannot mean expressly authorized by law, which they also argue, because this same sentence, So this is what I'm getting at. What's the law? So we have pointed the court, the best example we have is TILA, because Congress has outlawed convenience fees for credit cards. That's a different statute. That's the Truth in Lending Act? It has a different, that's a completely different statute with a completely different purpose. It's not, Your Honor, because the Consumer Credit Protection Act is the umbrella statute. It was an omnibus statute passed by Congress in the late 70s. The EFTA, TILA, and the Fair Debt Collection Practices Act were all part of the same statute. What does TILA say about collecting? TILA says that you cannot charge a convenience fee for a credit card, and that's what it says. Legislatures get together and convene to tell the public what is illegal. They don't get together in America to pass statutes to tell the public what they can do. So what is not prohibited in this country is legal. And so we have pointed to a statute that expressly, by Congress, tells credit card companies that they can. We'll have to imply, imply. It's implicit, yes, Your Honor. Based on the statute in TILA, that they can collect this convenient fee in a completely different statute, the Fair Debt Collection Practices Act. That seems like a stretch to me. It's not, Your Honor, because that's the way law works. So say we were talking about costs for filing a judicial foreclosure. And the debt collector had to file that, and they were successful, and they recover their costs in that lawsuit. There's not a statute that says a debt collector who wins in court in a judicial foreclosure can collect the costs of that. There's a rule, a court rule, whether it be a state court rule or a federal court rule that allows costs. And they want the court to go searching for a precise statute that says debt collectors may do this in this precise context. And that is an unreasonable reading of this statute. One of the arguments against your TILA argument is that the specific governs over the general. TILA talks about credit cards in general, etc. Yes, Your Honor. And this talks about payments in the context of processing mortgage payments. Yes, Your Honor. That's more specific than credit cards generally. I don't agree. I think permission has to be something different in this same sentence than expressly authorized. We don't have to have that. Otherwise, Congress wouldn't have used different language in the exact same sentence. So permission is something that can happen in silence. What do we do with the Consumer Financial Protection Bureau's published advisory opinion that clarifies the limits on a debt collector's ability to charge convenience fees under the statute? I don't think this court should pay any attention to that or give it any deference. I think the statute is clear. I think in a post-Loper Bright world, it's for this court to read this statute. And what the CFPB has said in its most recent pronouncement is regulatory creep from where it all started. The FTC, very close to enactment of this statute, wrote its commentary. And they read the statute exactly the way we do. They specifically said that this amount is either the debt or those things that are critical to the debt, including the interest and the late fee that would be defined by the terms of the mortgage. And that's what the FTC said. And so it has to be incidental. And in this court, you have to have a connection to debt collection. And so the law cannot be what it is in Alexander. And without that, they cannot prevail. They do not have a way to prevail because they can't satisfy that element. It's also not incidental because this court in Veal looked at something very similar, which is an optional avoidable FedEx charge. And the court said that something that a borrower can avoid by not having to pay it is not incidental. And that's under the same umbrella statute. And the same should apply here. I guess the line that you're drawing, it may be the right line, but it just seems to really, really, really restrict the nature of this statute. Because you're saying, I mean, just correct me if I'm wrong, but you're saying to be incidental to the collection of the debt, I guess maybe the right way to ask this is could you just explain to me like what would be something that would not be provided for in the agreement, right, but would also be incidental to the debt? So what is something that, you know, it's not provided for the agreement, it's not especially provided for the agreement, but it is nonetheless incidental to the debt and is therefore banned for a debt collector to collect under the statute? It's something banned or something permitted. I mean, the example that I use... So something that is not in the agreement, right, but this statute would say it cannot be collected by a debt collector. So if I tried to tell the borrower that instead of owing a $150 late fee, if I told them that they owed a $300 late fee, I mean, that's something that is prohibited under a different section of TILA, which is 1693E, because that is false and fraudulent. And the underlying debt instrument indicates that the late fee is $150. So that's exactly what you're looking at here. You're trying to prohibit a debt collector who has no control of the underlying instrument. They're given that and they have to enforce it as written. And so they cannot depart from those things that are incident to the debt when they're collecting it, namely the principal, the interest, the late charge, the insufficient funds fee, all of the things that would be defined there. But there may be things separate from that that the debt collector has to charge, like filing a judicial complaint for foreclosure. And if they can get those costs shifted back to them at the lawsuit, at the end of the lawsuit, just because it's not in the instrument, it's still permitted by law. This statute has a very narrow operation and it speaks in terms of collection. And it doesn't speak in the language of this same subsection 5, which speaks in terms of charges. And here you have an entirely separate transaction. And if they're right, then a mortgage servicer could never in the life of a 30-year loan offer a borrower a different service with full disclosure for consideration after acceptance, such as a FedEx fee like we had in Veal, credit monitoring, identity theft protection, the personal property protection that was at issue in the Seventh Circuit. And all of the courts who have looked at those circumstances have recognized, as long as it is avoidable and it's voluntary and there's full disclosure, it is not unfair or unconscionable in the language of the preface of this statute. And most importantly, it is not collection. It is a two-way transaction in real time, one time between the borrower and the servicer. And if there was a t-shirt shop in Occoquan and they purchased not a service but a good, they would say that's illegal because the borrower who bought the Occoquan t-shirt, a good as opposed to a service for an amount, that it doesn't have to be tied in any way to their mortgage, and it's not permitted by law because there's not some statute that says a debt collector can sell a t-shirt to one of its borrowers, they would contend that that's illegal. That takes this statute so far outside of its context, so far outside of its associates, and it ignores the language of the verb collect. All right. Thank you, Mr. Smith. Let me ask you before you sit down, Mr. Smith, and this is real economics as opposed to a technical, legal question. It's in your client's best interest to have the debtor pay online or by phone, is it not? It's in my client's best interest? Yes, because they can do it faster. Well, no, Your Honor. I mean, that carries other costs. It's not what we were hired to do. We were hired to collect this. Well, I mean, 40 cents per on one of them, I read in the briefs. But regardless of what cost it, it's in your best interest, your client's best interest, to allow a convenient, fast, don't put it in the mail, particularly given all the problems with the mail now, pay us this way, quick and easy. It's in your best interest. To provide it, yes. To provide it for free, no. There are costs incurred for that. But you charge way above the cost incurred, do you not? I don't know that that's in the record. It's certainly not in the record. It has not been litigated. And that's also not true because the 40 cents that you referred to is in the record. That's the direct cost for this. But the indirect costs are having a customer service center who answers those. Your client, contrary to any stereotypical images, is just doing it out of the goodness of their heart? No, Your Honor. I'm just saying there are costs for this. Just as if a borrower wanted me to make a full photocopy of their servicing history of a 25-year mortgage and then FedEx it to them. But your client obviously determines that the benefit in real revenue, net revenue terms, outweighs the cost or they wouldn't do it, would they? Well, governments do the same thing, Your Honor. I'm not asking about governments. I'm asking about your client. Yes, and I'm trying to answer the question. But a lot of that has not been litigated. It's certainly not in this record. And I think there are direct and indirect costs. I was just wondering about whether if we said, no, you can't do it, you would do it anyway? Oh, no, Your Honor. That's why we're here. That's not in the record, though, is it either? It's not. Some firms do it without cost, don't they? I mean without charge. I don't know the answer to that. I know that my client is not interested in providing it for free. But I think if there was an institution that is to say that this is illegal, I think Congress can do the same that they did for the credit card companies and they could specifically prescribe it. But without that, I think it's permitted. And I don't think it must be permitted. I understand. That wasn't my question. I was just wondering what would happen, flow from the decision in this case one way or the other. Well, I think that I would have to consult with my client, but I assume that they would stop providing it for free if that's what they must do. I understand. All right. Mr. Chabelle. Good morning, Your Honor. May it please the Court. My name is Glenn Chabelle. I'm after the plaintiff's appellees. Your Honors, it's a fundamental principle of problem solving that when you have multiple possible solutions to something, the simplest and most straightforward explanation is usually the right one. I submit to you that that principle applies with full force here to interpretation of Section 1692F of the FDCPA. The provision at issue here does not depend, there are not hidden meanings or technical constructions hiding beneath the surface of the everyday language that the statute uses. Instead, you can just interpret it according to its plain language. And my goal is to convince you today that if you do that, that leads to a result in our favor, a holding that the fees at issue here are covered by Section 1692F. So I want to focus primarily, time permitting, on three key terms in the statute. One is the term collection or collect. The other is the term any amount. And the third is the term permitted by law. Turning first to collection or collect, we didn't cover this very heavily in our brief, but my colleague on the other side has leaned heavily into that in their reply brief and argument today, so I want to focus on that. I suppose there's a world in which there's a technical construction of the term collection that would require an entity to make a formal demand for it or to make it mandatory in order for it to be collection. That's not the case here, and I want to give you several reasons why that's an untenable construction here. First, you have said in the Lee case that consumer protection statutes are to be construed broadly in favor of the consumer. Separately, you have said in the Agrello case that the FDCPA in particular is a remedial statute that must be construed broadly to serve its purposes. And finally, you have said in many cases, along with the Supreme Court, that when a statute does not define a term, you just give it its plain everyday meaning. And here, the plain everyday meaning of the term collection is to go out and get, to receive, payment for. There's no requirement for something to be collection for it to be mandatory, be made a demand. If I can give a little bit of an example, I collect Star Trek knickknacks, okay, and I've never gone out and said, you have to give me this item when I want to buy it. People come to me and they tell me they have something, and I might ask if they'll sell it to me or if they'll give it to me. If they say yes, then I'm collecting that because I'm receiving it. If they say no, I don't collect it. That's the case here with these fees because they are collecting any amount that is associated with the collection of debt here. How would you resolve the hypothetical T-shirt shop? I kind of thought the hypothetical would be, you know, look, I'm – Aukwin collects my mortgage, but I also rent office space from them or something like that, and so I also pay rent to them separately. Like is that rental payment or the T-shirt shop? How do you resolve that if we adopt this kind of broad reading of collector amount? I don't think those would fall under the definition here, and I think the answer lies in the statute itself. If you look at Section 69-2F, the very first clause, it's regulating the means to collect or attempt to collect a debt. So it's still got to be connected with the collection of a debt in a sufficient amount. So, for example, like if someone goes into Aukwin's hypothetical office to make a payment and they're selling candy at the front desk and they purchase the candy, that's not sufficiently connected. It's not a means by which they're collecting a debt. But here it is a means by which you're collecting a debt because they are telling customers or borrowers like Ms. Booz and Ms. Glover that you got to make a payment on this debt, and if you make that payment over the phone or online, you've got to pay this fee. So it is a means by which they collect those payments when those consumers use those payment methods. So just to put a point on this, you would say, look, there are some separate services that a debt collector could do. For example, if someone says, look, I need, I don't know what this could be, but I need some form or something from you, debt collector, because I've got some other issue over here and I need you to provide this for me, the debt collector could say, okay, well, if we're going to give you that document or we're going to provide this thing about your debt payment history to somebody, we're going to charge you something for that. That does sound like something they make a charge. Obviously, I'd want to look at the specific facts, but that does sound like something that would not be sufficiently considered a means of collecting the debt because it's a separate service, not related to the person making payments on the debt. Yes, Your Honor. Is it in the interest of the consumer generally to be offered an option to pay by something other than in person or mail? Yes, Your Honor, I think it is in their interest. Is it, you don't mind the option so long as the option doesn't come with a price tag? Right, but that's because the law says it can't come with a price tag. Yes, but I mean, you're talking about our ruling. I'm concerned about the effect of the ruling in this case. If we say, no, you can't do this, and it results in the consumer not being able to do it, not being able to make a free world choice to do it, then I'm not sure that's broadly construing a statute in the interest of the consumer. Well, Your Honor, I think that it is highly likely that if you rule the way that we're asking you to rule . . . And he thinks it's highly unlikely. I understand that, and we don't know, and that's what makes it somewhat difficult. I think you can look at the tea leaves, though. There are plenty of companies out here that offer these services without this fee tacked on. How do we know that? There are plenty of . . . it's not in the record in the district court, but if you want to go down that route, you can look at plenty of publicly available sources that show that. Let me just ask you, because just to follow up on Judge Carnes' question, but to put it in the terms of the statute, the statute starts by saying the following are unfair or unconscionable means, and it seems odd to me that if the general view is this is a good thing, it would be good for consumers to have this option, that we should then read the definition section of unfair or unconscionable to prohibit it, right? I mean, that just seems like a mismatch to me. What do you say about that? Well, I think Congress already made that determination, Your Honor. I think they weighed these interests, and that's why they included Section 1 here, the any amount provision it issued here. I think they decided that while there hypothetically could be some services that might in some ways benefit consumers, because of the process. See, I don't know about that, and here's the reason why. This seems to be outside the heartland of what this provision is going for. I mean, it seems like this provision, I mean, this law was to prevent abuses from debt collectors, so a debt collector, for example, you know, like they did back in the Bible tax collector times, where it would be like, well, you owe 20 percent, but we're just going to say you owe 40 percent and then keep the rest, right, that kind of thing. And even if we agree with Auckland, it still prohibits that. We're a little bit outside the heartland where now we're talking about things that we all sort of say, like, yeah, this should be allowed. I guess that's my concern. So two points on that, Your Honor. First of all, this is probably a point that you would predict I would make. But, again, I think those are policy arguments. I think Congress already made that determination by including this. But the second point, going beyond that into the policy world, I think there is evidence in the record. You know, we cited in our brief the studies and so forth that show that it is much more expensive for a company to collect a paper check and process that than to process these fees online or over the phone. And so it's still in their best interest to offer these services. It's in the interest of both sides. So that's why, going back to Judge Carnes' question, I think that they would still offer these, even if those fees were not charged. Of course, a big interest on the company side, and I see this in life insurance premiums, they get the money sooner. And when you multiply that by hundreds of thousands or tens of thousands of people, that's more float on the money. Because if you want to play chicken, you put it in the mail three days in advance and hope it gets there on time. And in the consumer side, the interest is in ensuring that it gets there. Because there's a report out a couple months ago, 29,000 separate instances of mail theft in the United States, and those were just the ones that were reported, and I didn't report the ones I suffered. That's very much in the interest of the consumer. And it's worth something to the consumer to have that option. And, you know, let's assume that it started, a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Excuse me. That was all the statute. You can't really say this is unfair or unconscionable to give the consumers or the debtors the option, other options. You have to freely and voluntarily do it. That's not unconscionable, is it? I don't think I would concede that, Your Honor, because I think because of the fact that these services benefit both sides and therefore they use the assessment of these fees to serve as a separate profit center rather than just offering a service, I would not concede that. I mean, the service itself is not unconscionable, but imposing these fees as a mandatory condition for using them I would say is unconscionable, regardless of section. That's the means. So all the rest of that is just surplus. It's just the rest of the language. Actually, it works in his favor because it implies limitations. I would say that's correct, Your Honor. I mean, it does. This is a broad statute. I don't understand you not trumpeting the second sentence without limiting the general application of the foregoing. Well, Your Honor, I agree with that. Look, I'll just say this. Every single aspect of this provision, whether it's without limiting the foregoing, whether it's the first clause about means, or whether it's the specific provision that we're relying on here that uses the term any, it shows that the intent of Congress was to broadly reach the means that debt collectors use when they are collecting the debt, and that includes things like assessing these fees. Moving on briefly to the term any amount, and I will be brief because we did cover this quite heavily in our papers, but I just want to say I'm not personally aware of a single provision in the United States Code, and I respectfully submit that my colleague on the other side has not identified such a provision where Congress used an all-encompassing term like the word any and then immediately turned around behind that and limited that term with a parenthetical of enumerated examples only. It would make no sense to use the word any in that circumstance, particularly when you're using, you're prefacing that parenthetical with the word including, which is not a limiting term. It is an open-ended term indicating examples. So I'll just, you know, that's just the point I wanted to make. Yeah. Can I ask you to address, I mean, could I just, we didn't talk a lot about this with opposing counsel, but the permitted by law, and specifically one of the questions I have is whether the expressly, expressly authorized by the agreement creating the debt or permitted by law, whether the expressly necessarily carries over to the permitted by law. What do you say about that as just a matter of text? I think expressly does carry over, but even if it does not, I think it makes sense that you would use two different phrases in that circumstance. And this is kind of going back to what Judge Wilkinson talked about a little bit in the Alexander case in the Fourth Circuit. You've got this parallel structure where you're talking about the agreement creating the debt and then you're separately talking about the governing law. So it would make sense that we'd use a little bit different language to talk about the law side of it to preserve options for future legislators to act in a way where it was clear that they were permitting, you know, certain types of fees without perhaps saying those fees expressly. And I use the example in my brief of the Siberian Husky. You know, that's an example where I think it would be, you could fairly construe the law to affirmatively authorize a fee, but not to necessarily expressly name it word for word, you know, fees associated with a payment over the phone or something like that. So I think that makes sense. And I will also say on a broader point about permitted by law, if you interpret permitted by law to just mean not banned, I respectfully submit that that just doesn't hold up. Because if you look, and that goes back to the FDCPA's purpose, I'll refer you to section 1692 and then subsection B of that, where Congress expressly found that existing legal protections were insufficient to protect consumers in this space. And so if you read this as a codification of state law, it just, in my view, it's just not reasonable and it just kind of neuters the protections that you've just claimed to provide by enacting the FDCPA in general. Couple points very quickly on TILA and EFTA. Your Honors, you know, EFTA is just a provision. The provision they rely on in EFTA is talking about disclosure. It's not a permission or denial of a permission for any types of fees. You know, I'm a fan of Edgar Allan Poe, but I don't even think he would find permission by law hiding in the shadows of a statute like that. And then TILA is a provision that bans one type of fee, a fee by a credit card company to make a payment on a credit card, not a payment by a credit card. So I see my time has expired. I'll just close by asking you to find that the FDCPA means what it says and says what it means, and we'd ask you to affirm. All right. Thank you, Mr. Chabell. Mr. Frazone for the amicus. Good morning. May it please the Court, Joseph Frazone on behalf of the Consumer Financial Protection Bureau in support of the penalties. And I want to start by highlighting something Judge Baxter had raised earlier about the backdrop against which the FDCPA was enacted. It was really meant to balance what had been an imbalance in the power dynamic between debtors and debt collectors. And so as a part of that effort in 1692 F1, Congress tried to create a bright-line prophylactic rule that said that collectors were not going to be able to, you know, tack on any fees you want unless they're two certain categories. It was expressly authorized in the agreement, permitted by agreement creating the debt, or it was permitted by law. And that permitted by law prong, we argue, requires an affirmative authorization. And we think that's evident in the text in a couple of ways. One, the use of the word permit. As we know, permit, and this is the same thing the Fourth Circuit has said, carries a connotative difference than something like allows under the law. Permit requires something more affirmative. And if you look at the structure, how Congress has phrased 1692 F1, it's a prohibition. You cannot collect unless permitted by law. But if permitted by law simply meant not prohibited, it's an odd way to read. Why didn't Congress say that, expressly permitted by law? I don't know why they chose that. Maybe they didn't think they needed to because that was encompassed by the phrase permitted by law. They recognized permitted by law meant a law that permits, a law that affirmatively authorizes. And, again, the two options here, as we see it, is either affirmative authorization or just if it's not prohibited, you can do it. And, sure, that may be like the general backdrop. But, again, Congress ended that backdrop by passing the FDCPA to say, if you want to tap on a fee, you need to show a source, whether that is agreement or that is a law, a legislator has said you can do this. While you're talking about that, Tex, could you explain something to me, which is just a practical question. What would need to be in the contract to authorize a fee like this? Because it says that the amount has to be expressly authorized by the agreement to creating the debt. So let's assume you wanted to draft a contract that authorized this. What would you have to say in that contract? It's not a position we've taken in our brief exactly what express requires. I think if you look at the template language that amici on the other side had dropped a footnote in their brief about like a standard mortgage agreement, they identify some fees and then they say the lack of an express authorization is not a prohibition. And I think that's a tacit recognition that express means identifying the fee. I'm not sure how specific. I guess this is the reason why I asked that question is because I think Auckland has a decent point. They're the debt collector, and we know under the definition in terms of the statute, the debt collector isn't the person that owns the debt, right? That's the nature of a debt collector. So by being the debt collector, they necessarily were not part of the contract between the borrower and the lender, right? Right. And their position is sort of, well, this fee is completely unrelated to that. You couldn't actually, and I'm reading into their argument a little bit. They're sort of saying you couldn't expressly provide for this fee in that contract between the borrower and the lender because it's just completely unrelated. It's just something that we charge. And I guess that's why I asked my question, like, is this a fee that you could cover in that contract? I don't see why you couldn't, why a contract couldn't say, in making payments on your mortgage, you are authorized to pay by any means, and the lender or any other party collecting can charge a fee for that service. So if they said, and I guess that goes, so if you just said, I don't want to completely derail you, so this is my last question on this, but if the agreement said a fee may be charged of some amount at the discretion of the debt collector for online payment services or expedited payment services or whatever you want to call it, that would be good enough, you think? I don't think you would need to specify. Again, this is not a position we take in our brief, but I don't think you need to specify debt collector. If it's just an agreement creating the debt says that, yes, a person collecting on the mortgage can charge this fee, expressly says that, I think that would be permitted. But, again, when it comes to permitted by law, there is no law here that says permanently the debt collector can charge this. TILA, again, is a different statute prohibiting a fee. Council tries to draw a negative inference that implication authorizes a fee, but, again, you need more than that for a permitted by law. And I guess you would agree with the plaintiffs on the T-shirt shop hypothetical or my office hypothetical about how you would resolve that. It would be those kinds of things would not be means to collect. Is that how you would resolve those? Correct. You are here because there is debt collection activity. There is a means to collect the debt. So where that is absent, where it's a truly separate transaction, we are not in 692F territory. All right. Thank you, Mr. Fuson. Yes, sir. Thank you. Mr. Smith. Thank you, Your Honor. You have reserved five minutes and we are going to hold you to it. Yes, sir. If you will look at the statutory appendix at the back of my blue brief, I wanted to talk quickly. I don't hear an answer today on my construction of the statute. 1692F1 uses a specific verb, collect. 1692F5 uses the verb, charge. The arguments here used charges more than they did collection, and AQUIN is not collecting this service fee. It is charging this price and it is keeping that price. It's not passing that on to the creditor. That is not collection, and so this statute doesn't apply. If you'll, Judge Carnes, if you'll allow me to give you a citation, the FTC commentary passed in 1988, 53 Federal Register Act 50107-108. The FTC said exactly where you were coming from. They said a debt collector's act in collecting a debt may be unfair if it does the following things. If it causes injury to the consumer that is, one, substantial, two, that isn't outweighed by countervailing benefits, and three, is not reasonably avoidable by the consumer. And here, the fee is modest, it is beneficial, and it is avoidable. And just as this court held in Veal that a FedEx charge, a modest FedEx charge for something that the debtor needed under those specific circumstances was separate from the extension of credit there, likewise here, this fee is separate. But again, Veal is different because we're talking about a completely different statute. I don't believe so, Your Honor, because this all falls under the same umbrella. And if you look to this idea that Judge Carnes and I were talking about, unfair and unconscionable, this same Congress that passes 1692F, if you turn to the next section in the U.S. Code, that's the EFTA, 1693, and that same Congress said the following. It said that financial services companies must disclose any charges that they impose for electronic fund transfers or for the right to make such transfers. That's 1693CA4. My notes here say, tell me if this is wrong. In Veal, they're interpreting TILA, and the FedEx fees in that case were disclosed and agreed to before the consumers selected a service provider and entered a voluntary credit arrangement. Is that right? I'll have to grab Veal. I didn't understand that to be true, Your Honor. But here, in terms of what is disclosed, every time these 36 convenience fees were charged, each time the borrower goes through a process where they're made an offer, they're given full disclosure that they have free means to transmit, the timing and method of their payment is in their control. And every time they get in a situation, it's not getting the money early, Judge Carnes. It's actually they're in a situation where they're late. But in Veal, the fees, the consumer knew about them in advance. And here, the consumer doesn't know about it in advance. Here, the consumer is given an option. It's completely avoidable, and it's fully disclosed. It's not unfair. They don't contend that it was unfair. They knew that they made these agreements 36 times, and if they need to do it in the future, we'll disclose it again. Is there anything in the agreement that would indicate that they knew that there would be these convenience fees in advance? In the underlying debt instrument, it is not there, but is nonetheless permitted, and our argument is that the same. I'm saying that's the difference between this case and Veal. Well, I think it's because it's avoidable, and getting back to what I was speaking in terms of the FTC commentary, they defined what was unfair, something that is a substantial, unavoidable, detrimental practice. And here, I think the record shows that this is a modest fee. If they want to make their own arrangements to get their payment to us, they can pay a FedEx fee for that. They can get a courier to bring their money to us. It's going to cost them much more money to do that than $7.50. And in the language of the FTC, this is a beneficial service, and we shouldn't have to provide this for free or quit doing it altogether. Thank you, Your Honor. All right, thank you. Court is adjourned. All rise.